Case No. 20-35838

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

TIFFANY HILL,

Plaintiff/Appellee,

v.

XEROX BUSINESS SERVICES, LLC; LIVEBRIDGE, INC; AFFILIATED COMPUTER SERVICES, INC.; AND AFFILIATED COMPUTER SERVICES, LLC,

Defendants/Appellants.

---

On Appeal From
United States District Court for the Western District of Washington
Case No. 2:12-cv-00717-JCC

---

**APPELLEE'S SUPPLEMENTAL BRIEF**

---

| | |
|---|---|
| Toby J. Marshall, WSBA #32726 | Daniel F. Johnson, WSBA #27848 |
| Email: tmarshall@terrellmarshall.com | Email: djohnson@bjtlegal.com |
| TERRELL MARSHALL LAW GROUP PLLC | BRESKIN JOHNSON & TOWNSEND, PLLC |
| 936 North 34th Street, Suite 300 | 1000 Second Avenue, Suite 3670 |
| Seattle, Washington 98103-8869 | Seattle, Washington 98104 |
| Telephone: (206) 816-6603 | Telephone: (206) 652-8660 |

*Attorneys for Appellee Tiffany Hill*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................1

II. ARGUMENT AND AUTHORITY .......................................................2

    A. For decades, the Ninth Circuit has applied special waiver rules in the context of arbitration ............................................................2

    B. The United States Supreme Court's decision in *Morgan* makes clear that arbitration-specific waiver rules are no longer valid.........3

    C. The three-part test and burden of proof announced in *Fisher* no longer apply ...................................................................................5

    D. Defendants' conduct establishes a knowing relinquishment of the right to arbitration .................................................................8

III. CONCLUSION...................................................................................10

## **TABLE OF AUTHORITIES**

Page

*Estelle v. Williams*,
    425 U.S. 501 (1976)..................................................................................8

*Fisher v. A.G. Becker Paribas Inc.*,
    791 F.2d 691 (1986) ........................................................................ *passim*

*Johnson v. Zerbst*,
    304 U.S. 458 (1938)..................................................................................8

*Lamps Plus v. Varela,"*
    139 S. Ct. 1407 (2019)..............................................................................4

*Morgan v. Sundance,*
    142 S. Ct. 1708 (2022).......................................................................... *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................1

*Newirth by and through Newirth v. Aegis Senior Cmtys., LLC*,
    931 F.3d 935 (9th Cir. 2019) ....................................................................3

*North Carolina v. Butler*,
    441 U.S. 369 (1979)..................................................................................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..................................................................................5

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*,
    572 F.2d 1328 (9th Cir. 1978) ..................................................................2

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................10

## **RULES**

Rule 23(a)(3) ...................................................................................................10

# I. INTRODUCTION

In *Morgan v. Sundance*, the United States Supreme Court unanimously held "that courts are not to create arbitration-specific procedural rules . . . based on the FAA's 'policy favoring arbitration.'" 142 S. Ct. 1708, 1714 (2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This Court has asked the parties to address whether "*Morgan* affect[s] any of the other issues in this case beyond eliminating the requirement that prejudice must be shown in order to establish that a party has waived its right to compel arbitration." Dkt. 41 at 1.

The answer is yes. The Ninth Circuit's case law regarding waiver of the contractual right to arbitration is rooted in "custom-made rules" that "tilt the playing field in favor of . . . arbitration." *Morgan*, 142 S. Ct. at 1714. That, at least, is how Defendants read and argue it. *See* Dkt. 9 at 23-24. Those rules include both the "heavy burden of proof" placed on the party arguing for waiver and the assessment of whether "[a]n earlier motion to compel arbitration would have been futile" or unripe. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694, 697 (1986); *see also* Dkt. 9 at 24, 34. But after *Morgan*, any such arbitration-specific rules cannot stand. Waiver of the right to arbitration, like any other contractual right, turns on whether a party's conduct reflects "the intentional relinquishment or abandonment of a known right"—nothing more, nothing less. *Morgan*, 142 S. Ct. at 1713. The evidence in this case overwhelmingly demonstrates that Defendants knowingly

1

relinquished the right to arbitrate by acting inconsistently with that right. Accordingly, this Court should find waiver and affirm the district court.

## II. ARGUMENT AND AUTHORITY

**A.  For decades, the Ninth Circuit has applied special waiver rules in the context of arbitration.**

In *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*, the Ninth Circuit Court of Appeals addressed the question of whether a party "waived its right to arbitration by taking depositions under the aegis of its suit to compel arbitration." 572 F.2d 1328, 1330 (9th Cir. 1978). In concluding that "no waiver took place," the court relied heavily on the preference under federal law for enforcement of arbitration agreements: "Although it is clear that a party can waive its right to arbitration, nonetheless, waiver is not favored and the facts must be viewed in light of the strong federal policy supporting . . . arbitration agreements." *Id*. The court continued, "[we] must be convinced" both that the party seeking to compel arbitration "acted inconsistently with [an] arbitration right" and that the other party "was prejudiced by this action before we can find waiver." *Id*.

Eight years later, in *Fisher v. A.G. Becker Paribas Inc.*, the Ninth Circuit again addressed the issue of waiver in the context of a contractual right to arbitration. 791 F.2d 691, 693 (9th Cir. 1986). As in *Shinto Shipping*, the court began its analysis by stating that "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement

2

of arbitration agreements." *Fisher*, 791 F.2d at 694. The court then went on to establish a three-part test: "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id*. The court added that "[b]ecause waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Id*. (internal marks and citation omitted).

For more than thirty-five years, the Ninth Circuit has applied this strict waiver test exclusively to arbitration agreements. *See, e.g.*, *Newirth by and through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019). The "usual federal rule of waiver," by contrast, is far less onerous: the party arguing waiver only has to show "the intentional relinquishment or abandonment of a known right" held by the other party. *Morgan*, 142 S. Ct. at 1713-14. "[A] prejudice requirement," for example, "is not a feature of federal waiver law generally." *Id*. at 1712.

**B.     The United States Supreme Court's decision in *Morgan* makes clear that arbitration-specific waiver rules are no longer valid.**

In *Morgan*, the Supreme Court addressed the issue of whether circuit courts "may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" 142 S. Ct. at 1712. The underlying facts of that case are straightforward. Robyn Morgan worked at a Taco Bell franchise owned by Sundance. *Id*. at 1711. Believing Sundance failed

3

to pay its employees in accordance with applicable wage laws, Morgan brought a nationwide collective action for violations of the Fair Labor Standards Act. *Id*. Sundance moved to dismiss the claims, but the district court denied the motion. *Id*. "Sundance then answered Morgan's complaint, asserting 14 affirmative defenses—but none mentioning [an] arbitration agreement." *Id*.

"[N]early eight months after the suit's filing," Sundance "changed course" and moved to compel arbitration. *Id*. "Morgan opposed the motion, arguing that Sundance had waived its right to arbitrate by litigating for so long." *Id*. "Sundance responded that it had asserted its right as soon as [the Supreme Court's] decision in *Lamps Plus v. Varela*," 139 S. Ct. 1407 (2019), "clarified that the arbitration would proceed on a bilateral (not collective) basis." *Morgan*, 142 S. Ct. at 1711.

The district court denied Sundance's motion, finding Sundance waived its right to arbitration. *See id*. at 1712. In a split decision, the Eighth Circuit Court of Appeals reversed on the ground that there was no prejudice to Morgan because "the parties had not yet begun formal discovery or contested any matters going to the merits." *Id*. (internal marks and citation omitted). The Supreme Court granted certiorari and held that "the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Id*. at 1711-13.

The Supreme Court started its analysis by recognizing that "[u]sually, a federal court deciding whether a litigant has waived a right does not ask if its actions

4

caused harm." *Id*. at 1711. "Most Courts of Appeals," however, have "appl[ied] a rule of waiver specific to the arbitration context" and held that "a finding of harm is essential." *Id*. This "special rule," the Court said, is "a rule found nowhere else—consider it a bespoke rule of waiver for arbitration." *Id*. at 1711, 1713.

The Court traced the rule's history and found it "derives from a decades-old Second Circuit decision, which in turn grounded the rule" in "the FAA's 'policy favoring arbitration.'" *Id*. at 1713. "Over the years, both that rule and its reasoning spread. Circuit after circuit," including the Ninth, "justified adopting a prejudice requirement based on the liberal national policy favoring arbitration." *Id*. (internal marks and citation omitted). These decisions, the Court concluded, were wrong. *Id*.

"[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id*. It merely "make[s] 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id*. (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id*. Accordingly, "a court may not devise novel rules to favor arbitration over litigation." *Id*. at 1713.

**C. The three-part test and burden of proof announced in *Fisher* no longer apply.**

Aside from the prejudice requirement, the test the Supreme Court examined in *Morgan* did not differ materially from the "usual federal rule of waiver." 142 S.

5

Ct. at 1714. As the Court described it, the Eighth Circuit will conclude a party has waived its contractual right to arbitration if "it knew of the right" and "acted inconsistently with that right." *Id*. at 1712 (citation omitted). This aligns with the usual definition of waiver: "intentional relinquishment or abandonment of a known right." *Id*. at 1713. For this reason, the Court did not address other arbitration-specific rules aside from a prejudice requirement. *Id*. at 1714. But the Court made clear that such rules can no longer stand: "[courts] may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.'" *Id*.

Unlike the Eighth Circuit, the Ninth Circuit's arbitration-specific waiver test includes features (other than a prejudice requirement) that are more stringent than the standard waiver rule or that can be interpreted as such. First, the party arguing for waiver of an arbitration right "bears a heavy burden of proof." *Fisher*, 791 F.2d at 694 (citation omitted). Outside waiver of certain constitutional rights, such an elevated burden has no application. And to state the obvious: a contractual right to arbitration is not, for example, on par with the Sixth Amendment right to assistance of counsel. Under *Morgan*, this Court's "heavy burden of proof" requirement is no longer valid because it treats arbitration differently from other contractual rights.

Second, the Ninth Circuit has held that the party arguing waiver in the context of arbitration must prove more than a "known right"; the party must go a step further and show the other party had "knowledge of an *existing right* to compel arbitration."

6

*Fisher*, 791 F.2d at 694 (emphasis added). At first blush, "known right" sounds similar to "existing right," but Defendants ask the Court to "interpret[] this criterion exactly as it is written: as a *current* ability to *successfully move* to compel arbitration." Dkt. 9 at 24. Defendants then maintain they could not technically do this until the class members who signed the 2002 arbitration agreement (DRP) formally became part of the case, which was eight years into the litigation. Dkt. 9 at 24-25. Similarly, they argue that "[p]rior to the Supreme Court's 2019 decision in *Lamps Plus* . . . it would have been futile for [Defendants] to move to compel arbitration under the 2002 DRP." *Id*. at 42. On Defendants' reasoning, waiver cannot be found in either circumstance even if the evidence shows (as it does here) a clear intent by Defendants to relinquish the right to arbitrate.

In his concurring opinion in *Fisher*, Judge Wiggins knew that if Defendants' interpretation of the court's test were correct, it would be a special, arbitration-preferring procedural rule. 791 F.2d at 698-99. But he concluded, with "a sense of disappointment," that he was bound to find waiver in the case before him because of "precedents of our circuit which tilt in favor of arbitration and against waiver." *Id*. at 699. He then presciently commented: "At the appropriate time, those precedents should be reexamined. Courts have declared their bias in favor of arbitration, and their resistance to waiver, for so long that the underpinnings of that proposition are seldom questioned." *Id*. He recognized what the Supreme Court later held in

7

*Morgan*, which is that the "strong federal policy" on which *Fisher* and similar cases stand is *not* a preference for arbitration but merely a requirement that arbitration agreements be treated the same as any other contracts. *Id*. As such, the prospects for compelling arbitration have no bearing on waiver. *See id*. at 698-99. If a party does not raise the defense and instead litigates for years, it waives the right. *Id*.

As it relates to contractual rights, as opposed to certain constitutional rights, a ripeness/futility standard is special to arbitration and tilts the playing field in that direction, which is improper under *Morgan*. For these reasons, the first prong of the *Fisher* test, as interpreted and argued by Defendants, is no longer valid.

D. **Defendants' conduct establishes a knowing relinquishment of the right to arbitration.**

This case presents an uncommonly unequivocal record of Defendants' deliberate choice to abandon their right to arbitration under the 2002 DRP. The Supreme Court has stated that a finding of waiver "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the [defendant]." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). As the *Sundance* Court emphasized, however, the "focus" of the inquiry is on the defendant's actions. 142 S.Ct. at 1713. If those actions "may be characterized as 'an intentional relinquishment or abandonment of a known right or privilege,'" waiver will be found. *Estelle v. Williams*, 425 U.S. 501, 524 (1976) (citation omitted). "The question is not one of form, but rather whether the defendant

8

in fact knowingly and voluntarily waived the rights" at issue. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Defendants' conduct in the district court below unequivocally reflects an intentional decision not to seek arbitration under the 2002 DRP. As set forth in the principal briefs, Defendants did not mention arbitration in their initial answer, in 2012, when the 2002 DRP was in effect. *See* 4-ER-596-606. Shortly thereafter, Defendants enacted a new arbitration agreement and when they answered Plaintiff's amended complaint in early 2013, Defendants *did* assert arbitration as an affirmative defense. *See* ER 21, 3-ER-571. But that answer unequivocally asserts *only* the 2012 DRP, *not* the 2002 DRP. It says the agreement in question "expressly prohibit[s]" those who are subject to it from participating in "class action litigation." 3-ER-571 (asserting "some members of the alleged Putative Class are subject to individual arbitration agreements that require arbitration of their claims and expressly prohibit their participation in class action litigation"); *see also* 1-SER-19-20. The 2002 DRP does not "expressly prohibit" class actions, but the 2012 DRP does. *See* ER 264-80; 2-SER 270, 279-80. This conduct shows that Defendants made a conscious decision at the outset of this litigation not to assert arbitration under the 2002 DRP.[1]

---

[1] Defendants insist the Plaintiff, Ms. Hill, was not bound by either the 2002 or the 2012 DRPs. *See* 2-ER 21; 1-SER-97. Thus, Defendants cannot explain their failure to raise one, but not the other, on that basis.

9

Defendants continued to pursue this course. In response to Plaintiff's motion for class certification, Defendants again raised the 2012 DRP but not the 2002 DRP. Defendant specifically argued that Plaintiff could not establish typicality as required by Rule 23(a)(3) because "agents hired after September 27, 2012, are subject to binding individual arbitration." 1-SER-98:9; *see also id.* at 98:15.[2] This conduct (and more) evinces a deliberate decision by Defendants to forego their rights under the earlier 2002 DRP, thereby establishing a waiver of those contractual rights.

This is true even if the Court concludes that *Fisher* remains good law (with the exception of the prejudice requirement) after *Morgan*. As noted above, Defendants' own decision to raise the 2012 DRP as a defense to *proposed* class members demonstrates there was no pre-certification issue with the ripeness of the 2002 DRP. *See* Dkt. 16 at 23-25. And raising the 2002 DRP as a defense before *Lamps Plus* was decided would not have been futile because the Court in that case merely applied the rule it had announced nine years earlier in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). *See* Dkt. 16 at 39-43.

### III. CONCLUSION

For these additional reasons, this Court should affirm the decision of the district court denying Defendants' motion to compel arbitration.

---

[2] In reply, Plaintiff conceded that employees bound by the 2012 DRP should be excluded from the class, and they were. *See* 1-SER 50 n.11.

RESPECTFULLY SUBMITTED AND DATED this 14th day of July, 2022.

        TERRELL MARSHALL LAW GROUP PLLC

By: /s/Toby J. Marshall, WSBA #32726
     Toby J. Marshall, WSBA #32726
     Email: tmarshall@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington 98103
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

     Daniel F. Johnson, WSBA #27848
     Email: djohnson@bjtlegal.com
     BRESKIN JOHNSON &
       TOWNSEND, PLLC
     1000 Second Avenue, Suite 3670
     Seattle, Washington 98104
     Telephone: (206) 652-8660
     Facsimile: (206) 652-8290

*Attorneys for Appellee Tiffany Hill*

CERTIFICATE OF SERVICE

I, Toby J. Marshall, certify that on July 14, 2022, I electronically filed the document entitled Appellee's Supplemental Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF System.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 14th day of July, 2022.

By: /s/ Toby J. Marshall
Toby J. Marshall